IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Debra Floyd; Audrey Joseph; Jennifer Shackleford; Sharon Smith; and Carol Wright, | ) ) ) ) | C/A No.   3:00-3997-17BC |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| South Carolina Department of Mental Health; Dr. Charles E. Bevis, individually; Francis Feagin, individually; Dr. Phillip Bowman, individually; Dr. Mazgaj, individually; Charles McLaurin, individually; Lee M. Lanier, individually; Leroy E. Fred, individually; Mary M. King, individually; Mariscia G. Cooper, individually, C. Gordon McBride, individually; R. Jesse Tanner, individually; Kathy Garner, individually; and Gwendolyn L. Dixon, individually, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is

1

charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

The five plaintiffs to this action assert a variety of claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; 42 U.S.C. §§ 1981, 1983; and a supplemental state law claim for the intentional infliction of emotional distress.

Because the claims all relate to employment matters, the case was referred to a United States Magistrate Judge for a Report and Recommendation on the motion for summary judgment filed by all defendants.

The Magistrate Judge issued separate Reports and Recommendations for the five plaintiffs. As to three of the plaintiffs (Debra Floyd, Jennifer Shackleford, and Sharon Smith), the Magistrate Judge recommended that summary judgment be awarded to the defendants on all claims. As to the remaining two plaintiffs (Audrey Joseph and Carol Wright), the Magistrate Judge recommended that some, but not all, of the claims asserted in this action should survive summary judgment and be set for trial before a jury.

On November 30, 2004, the court heard approximately three hours of oral argument on the objections lodged by plaintiffs Floyd, Shackleford, and Smith. At the conclusion of the argument, the court announced that, after conducting the required *de novo* review of all matters to which objections had been made, the court was of the opinion that the objections are not well taken and that the Magistrate Judge's Report and Recommendation should be

sustained in all respects.

As to the remaining two plaintiffs (Joseph and Wright), the court noted that the Magistrate Judge's Report and Recommendation failed to address the defense of qualified immunity asserted by the defendants against those two plaintiffs. Because the qualified immunity defense was properly raised and briefed before the Magistrate Judge, the court remanded the case for consideration of this issue. The Magistrate Judge issued a Supplemental Report and Recommendation on December 29, 2004. The Magistrate Judge found that none of the defendants were entitled to a qualified immunity defense. Each defendant filed objections to the Supplemental Report and Recommendation on January 12, 2005.

DISCUSSION

*I. Plaintiffs' Objections*

*a. Failure to Exhaust Claims*

The Magistrate Judge found that plaintiff Wright did not exhaust her claims for sex discrimination under Title VII. The Magistrate Judge found that plaintiff Joseph did not exhaust her claims for disparate treatment based on race or gender, her claims for retaliation or her claims for hostile work environment based on gender. The plaintiffs argue that under *Brown v. Runyon*, 139 F.3d 888, 1998 WL 85414 (4th Cir. 1998), the plaintiffs are not required to exhaust their administrative remedies. The Magistrate Judge correctly applied the relation back rule from *Brown* to plaintiff Joseph's retaliation claim only. Therefore, the plaintiffs' objections are overruled.

*b. Failure to Plead Retaliation Claim*

The Magistrate Judge found that plaintiff Joseph failed to plead a Title VII claim for retaliation. The plaintiff argues that the defendants knew that plaintiff filed an EEOC charge of discrimination in August of 2003 outlining retaliation as a cause of action. Thus, according to the plaintiff, her failure to plead this cause of action must not prejudice the outcome on the merits because the defendants knew about the claim. However, because this claim has not been pled, the Magistrate Judge properly concluded that there is no Title VII retaliation claim properly before the court.

*II. Defendants' Objections*

    *a. Title VII*

        *i. Employee/Supervisor Liability*

Defendants object to the Magistrate Judge's conclusion that they are subject to suit on the plaintiff's Title VII cause of action. In *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 178 (4th Cir. 1998), the Fourth Circuit held "employees are not liable in their individual capacities for Title VII violations." The *Lissau* Court further found that "supervisors are not liable in their individual capacities for Title VII violations." *Id.* at 180. Drs. Bowman and Bevis argue that they are not employers for purposes of Title VII. The board members also argue that they are not employers for purposes of Title VII and specifically are not the plaintiffs' employer because the plaintiffs work for the State of South Carolina. The board argues that it is not an employer for purposes of Title VII liability because, though it has the authority to employ personnel to run the local center, the plaintiffs are actually the employees

4

of the State. The court agrees. Likewise, Dr. Mazgaj cannot be liable under Title VII because he is not an employer. Thus, any Title VII claims against Drs. Bevis, Mazgaj, and Bowman and the board members in their individual capacities are dismissed. To the extent that the Magistrate Judge's Report and Recommendation is inconsistent with this result, it is expressly overruled.

### *ii. South Carolina Department of Mental Health*

Defendant SCDMH objects to the Magistrate Judge's recommendation that summary judgment be denied with respect to Wright's Title VII claim of retaliation against SCDMH because, according to the defendant, the only action of which she complains that can be viewed as an adverse employment action is her nonselection for a promotion. SCDMH argues that Wright has failed to present competent evidence that the reason given for her nonselection—that the person chosen was the most qualified candidate—was a pretext for unlawful retaliation. Having reviewed the evidence and memoranda in this case, the court disagrees with the defendant and finds that there is a genuine issue of material fact which would preclude summary judgment on this cause of action against SCDMH. Thus, the defendant's objection is overruled.

### *b. § 1983*

In order to establish hostile work environment under § 1983, the plaintiff must show that (1) the conduct was unwelcome; (1) it was based on race or gender of plaintiff; (3) it was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the

employer." *Spicer v. Virginia Dep't of Corrections*, 66 F.3d 705, 709-10 (4th Cir. 1995) (en banc).

### *i. Mazgaj*

Defendant Mazgaj objects to the Magistrate Judge's finding that there is sufficient evidence to preclude summary judgment on the plaintiffs' § 1983 claims that he subjected them to a hostile work environment based on race and gender. Mazgaj argues that plaintiffs failed to produce evidence that Dr. Mazgaj harassed them because of their race or gender. He further argues that plaintiffs failed to produce evidence that the incidents were severe enough to constitute a violation. The court disagrees. Therefore, defendant Mazgaj's objections are overruled and the Magistrate Judge's Report and Recommendation on this issue is adopted.

### *ii. Wright's § 1983 Claim against Bevis*

Plaintiff Wright asserts that she was denied a promotion and appropriate staffing by Dr. Bevis which contributed to the hostile work environment. Though Bevis asserts the position that Wright was not promoted because she was not the most qualified candidate for the job, there is some evidence that this reason may be pretextual. The plaintiff has presented deposition testimony that Bevis told another employee that Wright did not stand a chance of ever getting a promotion. Therefore, there is a genuine issue of material fact sufficient to preclude summary judgment. Defendant Bevis' motion for summary judgment on Wright's § 1983 claim based on Bevis' individual actions is denied.

### *iii. McWilliams/Shaw Standard for § 1983 Supervisory Liability*

Defendants argue that the Magistrate Judge erred by applying the wrong standard on

the claims based on supervisory liability under § 1983. The Magistrate Judge applied a negligence standard to supervisory liability. The court finds that the Magistrate Judge did apply the wrong standard to these claims.

The test for supervisor liability in § 1983 actions was set forth in *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994):

> We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id*. at 799.

The second element of supervisory liability, deliberate indifference or tacit authorization, is usually shown "by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id*. (internal citation omitted). The third element of supervisory liability, an affirmative causal link, is the equivalent of proximate cause. The supervisor is "liable for the natural consequences of his actions." *Id*.

Dr. Bowman saw the "Southern Dictionary" just before Dr. Mazgaj distributed it at a medical staff meeting. Dr. Bowman commented that "This memo could be offensive to some people." He did not take any further actions to prevent Dr. Mazgaj from distributing the offensive material. Within the next few days, on April 10, 2000, Joseph submitted a memorandum to Drs. Bowman and Bevis, outlining her concerns. This was the first instance

7

when Bowman learned of Mazgaj's conduct toward Wright and his other actions towards Joseph. This was also the first instance when Dr. Bevis received knowledge of these events. In response to this letter, Drs. Bevis and Bowman met. Dr. Bevis advised Dr. Bowman to verbally counsel Dr. Mazgaj and send him to sensitivity training. The plaintiffs assert that this was an inadequate response indicative of deliberate indifference or tacit authorization. The board members were notified of a problem with Dr. Mazgaj when they were copied on a memorandum from Joseph to Drs. Bevis and Bowman on April 21, 2000. There is no evidence that any of the board members took any action.

After Dr. Bowman verbally counseled Mazgaj, plaintiff Wright argues that Mazgaj attempted to have a private discussion with Wright and threatened to tell her supervisor when she refused. Wright asserts that on August 14, 2000, Mazgaj threatened her job because, at the request of her supervisor, she called another employee to ask if she was going to come to work. Wright claims that she was denied a promotion by Dr. Bevis because she filed charges of harassment against Mazgaj. Wright also claims that she was refused appropriate staffing.

According to plaintiff Joseph, after Dr. Bowman verbally counseled Mazgaj, Mazgaj openly questioned her supervisory abilities at staff meetings and refused to sign her medical protocols. Mazgaj testified that he did not sign the protocols because "it was presented to me after she filed complaints about me." Plaintiff Joseph also asserts that Mazgaj refused her access to a medicine cabinet.

### A. Joseph's Claim against Bowman

With respect to plaintiff Joseph's claim against Dr. Bowman, the evidence shows that

8

Dr. Bowman learned of the Southern Dictionary and Mazgaj's intent to distribute it before Mazgaj showed it to plaintiff Joseph. Dr. Bowman told Mazgaj, "this could be offensive to some people." However, he took no action to prevent Mazgaj from distributing it. This inaction could be viewed as tacit authorization of Mazgaj's conduct. Furthermore, as Dr. Bowman's remark demonstrates, a constitutional injury resulting from the Southern Dictionary could be viewed as the natural and foreseeable consequences of Bowman's inaction. The court finds there is sufficient evidence to withstand summary judgment on this claim.

### *B. Other § 1983 Supervisory Liability Claims against Bevis and Bowman*

In the present case, the evidence shows that after plaintiff Joseph advised Drs. Bowman and Bevis of Mazgaj's course of conduct against Wright and Joseph, they did take action. They met and Dr. Bevis advised Dr. Bowman to verbally counsel Mazgaj and send him to sensitivity training. Dr. Bowman conducted the verbal counselling and required Mazgaj to attend the training. The plaintiffs argue that this action was insufficient.

In *Shaw v. Stroud*, the Fourth Circuit was confronted with a plaintiff who argued the actions taken by the supervisor were insufficient. The Fourth Circuit found that "[a]lthough [the supervisor's] action may not have been the most effective and although he might have done more, such a rule is not the standard by which we judge [a supervisor's] conduct." *Shaw*, 13 F.3d at 801. The relevant standard is deliberate indifference or tacit authorization. The court finds that the reaction of Drs. Bowman and Bevis to plaintiffs' complaints, though not what the plaintiffs desired, was not deliberately indifferent and did not tacitly authorize continued harassment. Therefore, the court grants Dr. Bowman's motion for summary

judgment on Wright's § 1983 claims. Furthermore, the court grants Dr. Bevis' motion for summary judgment on Joseph's § 1983 claim. The court also grants Dr. Bevis' motion for summary judgment on Wright's § 1983 claim insofar as it is based on supervisory liability.[1]

### *iv. Qualified Immunity*

> [Q]ualified immunity protects government officials performing discretionary functions from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether a government official is entitled to qualified immunity, we must (1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable official would have understood that the conduct at issue violated a clearly established right.

*Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (internal citations omitted).

The plaintiffs claim they were denied the right to work in an environment free of racial and sexual discrimination. Subjecting a public employee to a hostile work environment based on race or gender is a clearly established violation of the Equal Protection Clause of the Fourteenth Amendment. *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994); *Riley v. Buckner*, 2001 WL 15193 (4th Cir. 2001) (unpublished).

### *A. Mazgaj*

Defendant Mazgaj objects to the Magistrate Judge's finding that he is not entitled to qualified immunity from plaintiffs' § 1983 claims. Mazgaj specifically contends that a reasonable official would not have understood that Mazgaj's conduct violated clearly

---

[1] Plaintiff Wright has also asserted that direct actions by Dr. Bevis constituted a violation of § 1983. These assertions are dealt with in § II(b)(ii) of this order.

established law. The court has considered defendant Mazgaj's argument and disagrees. Therefore, the court finds that defendant Mazgaj is not entitled to qualified immunity.

### *B. Bevis*

Defendant Bevis objects to the Magistrate Judge's finding that he is not entitled to qualified immunity from plaintiffs' § 1983 claims. Dr. Bevis' memorandum argues only that he should not be subject to supervisory liability because of qualified immunity. He does not address the fact that his own actions of not promoting plaintiff Wright and failing to provide her with staff are implicated. However, the court has fully analyzed whether Dr. Bevis should be entitled to qualified immunity for his individual actions. The court finds that a reasonable person in Dr. Bevis' position would have known that failing to promote Wright based race would violate a constitutional right. Therefore, taking the evidence in the light most favorable to Wright, the court finds that Dr. Bevis is not entitled to summary judgment on Wright's § 1983 claims against him for his own individual conduct.

### *C. Bowman*

In *Shaw v. Stroud*, the Fourth Circuit enunciated the test for determining qualified immunity from supervisory liability under § 1983:

> [T]he plaintiffs must make several separate showings to demonstrate that [defendant] lacked qualified immunity: (1) it was 'clearly established' at the time of [the employee's] conduct that [the supervisor] could be held liable under § 1983 for constitutional violations committed by [the employee]; (2) it was "clearly established" at the time [the supervisor] was supervising [the employee that the conduct the supervisor knew the employee was committing] was unconstitutional; and (3) a reasonable person in [the supervisor's] position would have known that his actions were unlawful.

11

*Shaw*, 13 F.3d at 801.

The fact that there is a well established test for supervisor liability under § 1983 demonstrates that the first element is met. The Fourth Circuit has repeatedly held that supervisor liability exists under § 1983 when the three elements articulated in *Shaw v. Stroud* are met. Thus, the first element is met as to all defendants.

It was clearly established at the time Dr. Bowman was supervising Dr. Mazgaj that Mazgaj's actions were unconstitutional. "Subjecting a state employee to a hostile work environment violates the Equal Protection Clause of the Fourteenth Amendment." Supplemental Report and Recommendation at 4, citing *Riley v. Buckner*, 2001 WL 15193 (4th Cir. 2001) (unpublished).

The issue is whether a reasonable person in Dr. Bowman's position would have known that his inaction when Dr. Mazgaj presented the Southern Dictionary to him was unlawful. Dr. Bowman's own response, "this could be offensive to some people," demonstrates that he was aware of the potential implications of Dr. Mazgaj distributing the document during a medical staff meeting. The court finds that a reasonable person in Dr. Bowman's position would realize that, as Mazgaj's supervisor, he had an obligation to attempt to prevent this possible harm. Therefore, Dr. Bowman is not entitled to qualified immunity on Joseph's § 1983 claims.

### *v. The Board*

The Pee Dee Mental Health Center Local Board Members (board members) object to the Magistrate Judge's recommendation that their motion for summary judgment on plaintiffs § 1983 claims be denied. The board members argue that they have no authority to make

12

employment decisions or to supervise or control state employees. The board members argue that state employees, such as the plaintiffs and the other defendants, have no official relationship with the local board. Plaintiff, citing the Board's by-laws, argues that the Board was "responsible for Personnel matters of the Center." The board members argue that the board is a distinct entity and are not in the chain of command at the South Carolina Department of Mental Health. The board members point to the plaintiffs complaint for the proposition that the other defendants are state employees.

The board further argues that as an arm of local government, it is immune from suit under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978). Plaintiff argues that local government may be sued under § 1983 "when execution of a government's official policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992) (quoting *Monell*, 436 U.S. at 691, 694). The plaintiff argues that individual board members are liable as policy makers. The plaintiff further argues that Dr. Bowman's actions, in failing to force Dr. Mazgaj to comply with applicable standards, created a policy for which the board can be held liable. There is no evidence of an official policy. Furthermore, there is no evidence that defendants Bowman and Mazgaj are employees of the local board or that the local board members are supervisors to these state employees. Therefore, the plaintiffs' § 1983 claims against the individual board members must fail. The summary judgment motion of the individual board members is granted. To the extent the Magistrate Judge's Report and

Recommendation differs from this conclusion, it is overruled.

### *c. Intentional Infliction of Emotional Distress*

#### *i. South Carolina Tort Claims Act*

The defendants object to the Magistrate Judge's Report and Recommendation on the grounds that it does not address the defendants' claim that the South Carolina Tort Claims Act shields them from liability on the plaintiffs' claims for intentional infliction of emotional distress. The South Carolina Tort Claims Act, S.C. Code § 15-78-10 *et. seq*., "constitutes the exclusive remedy for any tort committed by an employee of a governmental entity." S.C. Code § 15-78-70(a). The South Carolina Tort Claims Act covers the actions committed by an employee within the scope of his duties. *Flateau v. Harrelson*, 584 S.E.2d 413, 416 (S.C. Ct. App. 2003).

South Carolina Code § 15-78-70(b) provides that an employee is not exempt from liability when his "conduct is not within the scope of his official duties or that it constitute[s] actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code § 16-78-70(b). "Scope of official duties" is defined as "acting in and about official business of a governmental entity and performing official duties." S.C. Code § 15-78-30(i).

The court finds that Dr. Mazgaj's conduct toward plaintiffs Wright and Joseph was not within the scope of his employment. Therefore, the South Carolina Tort Claims Act is not applicable to Dr. Mazgaj. Dr. Mazgaj's objection is overruled.

As Mazgaj's supervisor, part of Dr. Bowman's job involves responding to claims of misconduct by Mazgaj. Thus, the court finds that Dr. Bowman's conduct was within the scope

14

of his employment. The South Carolina Tort Claims Act shields Dr. Bowman from liability on the plaintiffs' claims of intentional infliction of emotional distress. Likewise, all of the plaintiffs' allegations against Dr. Bevis on this claim involve conduct that falls within the scope of his employment, including supervision and discipline of employees and personnel issues such as staffing.

To the extent the Magistrate Judge's Report and Recommendation failed to address this issue, it is hereby modified. Defendant Bowman's motion for summary judgment on the plaintiffs' claim for intentional infliction of emotional distress is granted. Likewise, defendant Bevis' motion for summary judgment on the plaintiffs' claim for intentional infliction of emotional distress is granted.

### ii. Sufficiency of the Evidence

> To establish the tort of intentional infliction of emotional distress, or outrage, the plaintiff must establish the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or knew that distress would probably result from his conduct, (2) the defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. Initially, the trial court determines whether the defendant's conduct was extreme and outrageous enough to permit recovery; the judge should submit the issue to the jury only where reasonable persons might differ on this issue.

*Gattison v. South Carolina State College*, 456 S.E.2d 414, 416 (S.C. Ct. App. 1995).

Defendant Mazgaj argues that the plaintiffs have not produced sufficient evidence to establish the second element of this claim. The court finds that the evidence is sufficient to

15

overcome summary judgment. Unlike *Gattison*, *id.* at 157, and *Wright v. Sparrow*, 381 S.E.2d 503 (S.C. Ct. App. 1989), there is evidence in this case of "hostile or abusive encounters or coercive or oppressive abuse." Therefore, the defendant's objection is overruled.

The Board Members assert, in their original motion and memorandum, that the plaintiffs' complaint fails to allege facts sufficient to state a claim for intentional infliction of emotional distress against them for their conduct. The plaintiffs' complaint alleges: "Plaintiff Joseph informed the Board of Directors of Pee Dee Mental Health Center of her concerns, however the Board refused to address her concerns" and that Wright "informed ... the Board." Plaintiff further argues that "because Defendant Board knew of and condoned this egregious behavior, its indifference creates liability in outrage." Plaintiffs' Response to Defendants' Objections to Report and Recommendation, § IV. The court finds that these allegations are insufficient to state a claim for intentional infliction of emotional distress based on the board members' conduct.

The Board further asserts, in its objections to the Magistrate Judge's Report, that it cannot be held liable on plaintiffs' state law claims under a theory of respondeat superior because there was no master/servant relationship between Drs. Mazgaj and Bowman and the Board. According to the plaintiffs' complaint, Dr. Mazgaj was employee of the South Carolina Department of Mental Health, not an employee of the local board. Taking the facts in the light most favorable to the plaintiffs, the court finds that there is no genuine issue of material fact and the board members are entitled to summary judgment as a matter of law. Therefore, the defendant board members' motion for summary judgment on the plaintiffs' claims for

16

intentional infliction of emotional distress are granted. To the extent the Magistrate Judge's Report and Recommendation differs from this decision, it is expressly overruled.

*d. The defendants' other objections*

The court has considered the defendants' other objections, reviewed the Magistrate Judge's Report and Recommendation, the motions and memoranda which were before the Magistrate Judge along with the exhibits presented and the relevant case law. The court finds the objections which have not been specifically discussed above unpersuasive. Therefore, all objections not specifically addressed above are overruled.

CONCLUSION

Defendant South Carolina Department of Mental Health's motion for summary judgment on plaintiff Wright's Title VII claim for retaliation is denied. All other motions for summary judgment on plaintiff Wright and Joseph's Title VII claims are granted. Defendant Bevis' motion for summary judgment on Wright's § 1983 claim is granted in part and denied in part. Defendant Bevis' motion for summary judgment on Joseph's § 1983 claim is granted. Defendant Bowman's motion for summary judgment on Wright's § 1983 claim is granted. Defendant Bowman's motion for summary judgment on Joseph's § 1983 claim is denied. Defendant Mazgaj's motions for summary judgment on Wright and Joseph's § 1983 claims are denied. Defendant board members motion for summary judgment on Wright and Joseph's § 1983 claims are granted. Defendant Mazgaj's motions for summary judgment on Wright and Joseph's claims for intentional infliction of emotional distress are denied. All other motions for summary judgment on Wright and Joseph's claims for intentional infliction of emotional

distress are granted.

This case is hereby set for trial during the July 2005 term of court. All counsel should mark their calendars accordingly.

IT IS SO ORDERED.

                                                /s/ Joseph F. Anderson, Jr.
                                                United States District Judge

April 22, 2005
Columbia, South Carolina